May it please the Court, Thomas Saunders on behalf of Collin Hawkins. Your Honors, this case is here in an unusual posture, which is that I filed initially an Anders brief on two issues, an illegal arrest and competency of counsel. My client filed a Prose brief, and then this Court ordered a briefing on whether or not the mandate rule barred the two issues. My client's position is that they don't, and for two reasons. First off, the issue about competency of counsel in terms of failing to file certain things on an appeal never arose during the trial and did not appear as an issue until that brief was filed and he was informed of the brief. By then, the issue was already on the way to this Court. On the first issue, the illegal arrest, it comes down to the government and I agreeing that the Bell opinion of this Court of some longstanding controls and that the third prong, whether or not there was a blatant error involving serious injustice, blatant injustice, sorry, is in fact the case here. And my client's position is that there was. There's little question that the trial judge made an error around the hearing on the arrest. He stated on the record that because there was an outstanding warrant that was unknown to the officers at the time that the arrest was legal. He deferred any finding on a Terry stop and the case went on. Now, for reasons unknown to me, there was a decision made and it's on the record, which I briefed in my Andrews brief and touched on in terms of the colloquy, in terms of waiving the right to go forward on the guilt innocence on that charge. I find that troubling as a trial lawyer in that what was done was an abandonment of an issue that was clearly reversible error. The colloquy really is close to a Johnson deserves waiver, but it does not cover the issue of abandoning appellate issues that were preserved on a motion. Just so I understand where we are procedurally, is this the part where your client stipulates to the elements of the crime? Is that what he does? He doesn't stipulate to the elements of the crime. Your honor. What he does is he says that he's making a decision not to contest the issues that he and his attorney decided on a trial tactic not to contest the issues and they go through his right and essentially the judge then intervenes and goes further with that and makes sure that he understands that in essence he's all but pleading guilty because not contesting in front of the jury will mean that the jury will most likely convict him, but that yes, that did occur in that manner. So if you were to succeed on the fourth amendment claim now, what would be the effect of that given that he has effectively already pled to the offense? Well, because I have a question about mootness and whether this is a redressable thing. Well, he didn't plead guilty. In other words, there wasn't a rule 11 colloquy and so there wasn't a guilty plea and not everything was covered in terms of him waiving his rights in order to plead guilty. What he did was he said that he's accepting his client, his attorney's advice to take a tactical procedure and that tactical procedure is not to contest the matter in front of the jury. Is it too late for him to contest it now? I do not believe so, Your Honor, in that the record is unclear whether or not he was new that he was giving up a reversible error issue. Please tell me if I'm wrong. I feel like this is the first time hearing of this. Has that issue been appealed? Did he ever challenge that hearing or? He challenged it in his brief. In this court? Yes. In other words, I did the Andrews brief and if I'm wrong in filing an Andrews brief as opposed to a matter on the merits, I was troubled by the waiver, but there is a waiver in the record. And then the issue this court has always said with regard to questions of attorney competence most likely in almost all instances you go back and have a review where there can be a record and the attorney can establish certain facts as well as the defendant. So if I was an error in proceeding on an Andrews brief, I apologize to the court, but it troubled me and I didn't know how to construct it. I am here based on your orders to brief this issue on the merits in terms of whether or not the mandate rule applies and looking at it from my client's perspective, his position is that the mandate rule does not apply here because of the fact that there was clear error and clearly to have an illegal arrest resulting in the seizure of a gun is gross injustice as this court has said. What made the arrest illegal? What made the seizure illegal? What made the seizure illegal? I got that all over the record. It's illegal, illegal. Okay. Well, let's talk about the facts of it. Tell me the facts now. Okay. This guy, uh, okay. Okay. Well, the fact, the facts of this, your honor, the, um, a particular officer, uh, and not all of this is safe. Not all of this is on the record in terms of the trial was on the record here. What's makes this what's on, what's on the record, your honor, is that the officer receives officer painter had received information from another officer that an anonymous informant stated that Mr. Hawkins was the person who had shot a police officer. That's the sole information based on that. And they were given information that at a certain point he would be coming to a certain place. She would call him, he would appear. The officers went there and this is stated in the government's it was not a Terry stop. This was a decision based on an anonymous tip to detain an individual and take him to homicide for questioning, which I believe is an illegal arrest. What makes it not a terrorist stop? If you may have had that intent, but if they stop it in for investigatory purposes, well, the only thing is a terrorist stop. Does that complicate matters a bit for you? If it is, if it is, it does complicate things, your honor. So if these facts established this is a terrorist stop, there's not a whole lot of illegality in this, is it? My client will not let me concede that point, your honor. I understand that I'm talking about the law here. We're not asking you to concede it, but you don't have anything against that. You know, as a lawyer, as a lawyer, I do not have any case law that would argue otherwise. And I'm just trying to think this is one of those cases where you, I understand we've asked you to bring it up here, but I'm trying to figure this out. This guy is there and he got an anonymous tip. He's shot an officer. And then what does he do? Your honor? He fronted by the officer. Okay. Well, he's walking along the street. The officer says on two occasions when he stepped off the curb or something, he saw him touch his waistband, touch his waistband. Yes. Where is he located? He's on the street walking down. The officer's in a Bible shop making observations. Uh, Mr. Hawkins, absolutely. Okay. The, the, the, the individual, uh, Ms. Hawkins is walking by, I believe it's a Shell station. It's a gas station. And he's walking over to a particular store. Officer has a call that he's the guy that just shot a police officer. He knows that at least, at least he's got an anonymous call. Anonymous tip. And he's doing an investigation. Yes, sir. And so he sees this, he sees the guy. Yes. Then what happened? And then the individual goes into a store and there are two other individuals with him. The officer then approaches and believes he makes a move toward his waistband. He doesn't indicate that he reached into it or did anything like, but just a movement. He's making a move toward his waistband. Right. Then the officer pulls his weapon and tells him to put his hands in the air. And you know, and does he do that? No, he doesn't. He doesn't do that. No. So what does he do? He refuses to put his hands up. And then eventually a struggle occurs where the officer subdues him and seizes the weapon from him about what goes on in those circumstances. I mean, this is not one of those situations. I'm not going to go in a whole other type of situation, but I mean, this is really, I mean, he's got this, how do you just put his hand in the air? I mean, he's asking me to do it. And by the way, it does have a gun. I guess that's why he's here. Your Honor. Um, but the question remains of whether or not it was illegal to arrest him at that point, because they went there with the intent to arrest him. Well, no. Detain him. Sorry. Well, that the team gets back into the Terry type. Stop. Not when you're going to detain him and take him to homicide as an anonymous tip. This is the guy that shot. He sees him. What does he do? Nothing. He obviously has the right to approach him and find out his identity. Right. And so he does that. He says he sees his hands down and these are not officers that you just put on the beat yesterday. These guys have been around. They know, they know what's going on here. Well, he sees his hand going down and he just tells him he doesn't shoot him. He doesn't do anything. None of that. He just says, put your hands in the air and he won't do it. I think he just, he said, keep your hands in the open or something, but I don't know if it's like this kind of thing. Um, he did not. Let me just ask it just so I understand sort of what the facts are putting to one side officers intent to detain because I just don't see how that's relevant. But if we're just looking at whether this was a valid Terry stop, we can, we look at the shooting and the anonymous tip. I thought that the record on the Terry issue was confined to what officer painter sees when he gets to the Bible store or wherever it is. It is your honor. And, and, and what, and the government wants to expand that record to looking at the record. So it starts with, he sees him touch his waist band twice. And at that point he pulls the gun and says something like, show me your hands. But would you say that that's when the seizure occurred? Yes. So the Caesar, the seizure itself is based on two touchings of the waistband. I believe that's your argument. Yes. Now, now just so I clarify, and I was a little unclear with you, uh, judge when, which is that, um, the information in front of the jury and the judge, you know, and, and, and the, and the judge, everything was limited in the record to, so that the evidence about the shooting was talked about, but never actually introduced into evidence. And I understand that the government is arguing that in looking at the mandate rule, and is this a blatant, I can't remember, but it's blatant, but the manifest injustice part that for that purpose, we should look at the whole record and putting that question to one side of all we're considering is, is this a valid Terry stop putting to one side, whether we should expand the record to apply the mandate rule? It's really just the two touchings of the waistband and then the stop. Yes. That's your, at least that's your argument. Yes, your honor. And if I may just say that when you do that, I want you to put it in the context of the United States versus George and tell me, is that all it is? I mean, isn't it the nervousness and all the other totality of the circumstances here? Uh, those weren't articulated in terms of nervousness, et cetera. And, uh, well, anything articulated about high crime area, nothing was articulated about those other issues. Now, those would be facts that might come out later on. Would you say if there were another hearing? Yes. But I don't know that there will be, I can't concede that. And if there were another hearing, maybe the record would be expanded, but on sort of the record in front of us. Yes. The record in front front of your honors is much more limited. And I contest the government's position that they can expand it by simply asking the court to adopt this other information that was not presented and subject to cross examination, et cetera. And if I may reserve the rain remaining time unless there's a question at this point. Okay. That's fine. Thank you. Mr. Hanlon. Your honors, may it please the court? My name is Michael Hanlon. I'm an assistant U.S. attorney from Baltimore, Maryland. The United States does ask that the court affirm the conviction of Mr. Hawkins in this case. Speak directly on the terrorist stop aspect and what was necessary. Uh, and was it sufficient? Because the defendant says it's not a terrorist stop. The evidence is insufficient for me to speak directly in terms of what evidence is showed to make it a terrorist stop. Certainly, your honor. I'll begin with the question of whether or not it was in fact a terrorist stop as opposed to an arrest. This was a terrorist stop, your honor, because it was from a reasonable person, the Mendenhall standard, a reasonable person, the position of the defendant. He was not detained in a way that was consistent with a formal arrest prior to the discovery of this gun. The defendant's argument that this was an arrest or an unlawful arrest is based solely on the subjective intentions as the defense understands it of the officers. That's an irrelevant consideration in terms of whether this is a terrorist stop or an arrest. What evidence that shows that a terrorist stop occurred here, though? The officers... What evidence did they rely upon to show that? That it was a terrorist stop or that it was a justifiable terrorist stop? Yes. Both. I'll begin with justification, your honor. Strictly based on the testimony of Officer Painter, if this were the only witness we had on the Fourth Amendment issue, this is what the officer testified to. He's doing surveillance. He sees the defendant on the street. He sees during the course of his observations, twice on the street, waistband, right side waistband movements by the defendant. Now, in the officer's experience, that kind of movement, that kind of use of the hand, the position on the body is consistent with the concealing of a firearm because of the manner in which firearms are often held by people who do not have holsters. This was evidence at the trial level? This was at the trial, your honor. Trial testimony, subject to cross-examination, but trial testimony because of the unusual posture of this case. So he sees that twice on the street. It's an immediate... Something that the officer recognizes. And there's certainly plenty of case law that talks about these waistband security checks. Very importantly... Can I just... Of course, your honor. Just a question. Is there any case law saying that two touches of a waistband is sufficient for a terrorist act? Your honor, I was unable to find any cases that have a waistband security check by themselves. They're often in conjunction with something else. But the government believes that the something else in this case is provided by the sheer number of these security checks. There were three total prior to the final seizure and by the timing of that final seizure and by the defendant's lack of compliance. And this is what happens once the officer gets into the minimart or the Exxon minimart or whatever it was that he was inside. He approaches the defendant. He's in full uniform. At that precise moment, as he's approaching the defendant, the circumstances of the testimony made it seem as though the defendant was reacting to his approach. The defendant does that third security check to his waistband. So two on the street, one in the minimart. The third one just as the officer's approaching. The timing, I think, is critical. Certainly from the officer's point of view, he had very, very good reason to be worried about this. The officer draws on the defendant. The defendant does not comply. He is not seized at that moment because... Sorry, I'm not even sure we get to the merits of the Fourth Amendment question, but it's very interesting. But it's not like he takes off, like in Haddari D, right? That's the big case. He doesn't go anywhere. He's standing there. How do we know he's not in compliance with the stop? Because he's... And what does he say? He says, like, why or something like that? He asks why, and I'm not sure that I would rely on the defendant's questioning as indicating lack of compliance. Right, right. But so what is it that's... I mean, he's not going anywhere. So why is he not, in fact, complying? He refuses to show hands. In a situation where the officer has a concern about someone being armed and has drawn a weapon on someone and wants to see the person's hands, and the defendant not only doesn't show hands, but over the course of this encounter, including the struggle, continues to fiddle around with his waistband, that is noncompliance. And there's certainly nothing indicating an acquiescence to authority. Under the Fourth Amendment, a seizure takes place once a police officer puts his hands on a person or when the person submits to a show of authority. Whatever the defendant did, Your Honor, he did not submit to a show of authority, and he's not touched until the officer grabs him and pushes him forward, which, while certainly the use of force, was a particularly tailored maneuver that was in front of him. So for that reason, the defendant's final decision not to show hands, not his statements or his questions, which I think Your Honor agrees with, but that decision under these circumstances, not to show hands under circumstances where that's precisely the officer's concern in a kinetic, dangerous situation, which this had already become, in full uniform with the timing of that last waistband check, that provided reasonable suspicion for the officer to take the action he did. So where you really disagree, just so I can, so where you really disagree with your opposing counsel is on the precise timing of the seizure, right? It's one thing if the seizure occurred when the officer drew his gun, but if it didn't occur until after there was the failure to show hands, I mean, that's the difference between you, right? If you understand it. We appear to have a disagreement on timing, and the result of that disagreement on timing, I suppose, is whether or not I get to rely on the defendant's final noncompliance. I think the government has a pretty good case for a Terry stop even without that, Your Honor, three security checks, including that one, at the moment as the officer's approaching, but I believe that the government can rely on the noncompliance as well, because if the defendant didn't submit to authority, which is the hallmark of a Fourth Amendment seizure. I think the defendant would be thinking, like, I'd rather be anywhere but here, but I'm standing here talking to you, and that's my submission, but you think unless, more is required than just standing still and talking. I think submission to authority, I don't have my dictionary in front of me, Your Honor, but I think submission to authority means doing what the officer tells you to do, showing your hands or getting down to the ground or submitting. When a person's told to show hands, in this kind of situation where our Terry stop is joined to a potential possession of a weapon, the failure to show hands when instructed by an officer who's drawn his weapon is not submitting to authority. Again, that's the tail end of what I think is a sequence of events that justified the Terry stop in this case, based solely on the I'll address the, unless Judge Wynn has more questions for me on the Terry issue, I'll turn to the mandate issue briefly, Your Honors. This is a case in which the mandate rule should be applied. This is not a situation, and I may get the standard wrong, in which a blatant error has resulted in serious injustice. There was no blatant error here, because although the government cannot rely on the precise reasoning of the district court in this decision, and I don't think that was the district court's fault, Your Honor, it's an interesting record, I think is one way to put it. I don't rely on the reasoning, but the fact of the matter is the result was right, because this gun would not have been suppressed and should not have been suppressed. I don't think it would have been suppressed under Painter's testimony solely. It certainly should not have been suppressed based on all the evidence in the record, which I think the court can rely on, on the question of serious injustice. The bottom line is, you take Officer Painter and the testimony proffered in the government's record, there was no injustice, no serious injustice. I don't know if it's an easy one. It may not be the blatant error standard, but easy is probably not a good word on this one. Maybe I won't use that word on Your Honor's advice, Your Honor. But I think it's a good Terry Stock case, and I think it's strong with Painter. I think it's stronger, I'll say stronger, based on the total record, which I think the court can rely on the mandate issue. I think the court's ability to consider the mandate issue is much broader. With respect to the ineffective assistance of counsel on appeal claims, Your Honor, I think also that's a very strong case where there is no ineffective assistance of counsel. There was outstanding assistance of counsel during the first appeal in this case. I've briefed the issue. A strong argument resulted in a published opinion, turning a 30-year sentence to what I believe is now a six-year sentence. Very good. Do we need to conclusively decide the Fourth Amendment issue to dispose of this case, for instance, on the mandate rule? I don't believe the court actually needs to, Your Honor. I think if the court believes that it's a close call, or it's uncertain, or that it could have gone the government's way, or that the government had a really good case, or that the defense probably didn't have much of a case, I think under the mandate rule, there's no serious injustice and there's no blatant error. I think the government clearly wins if the court agrees with the government on the merits of the Fourth Amendment issue. If the court believes that the Fourth Amendment issue was kind of close, could have gone one way or the other, that gets wrapped up in all the tactical decisions, the procedural posture of this case, and under the mandate rule, that again favors affirmance under the mandate rule principle. I do not believe, Your Honor, that this is a case for overturning the mandate rule in this second appeal. There is simply no serious injustice and no blatant error that permits this Fourth Amendment issue to be resurrected five years after the fact on the second appeal. Can you address my question about mootness and whether we even could reach the Fourth Amendment issue? I am concerned that the defendant has formally agreed not to contest this charge, and so even if the gun were to be excluded from evidence, what happens? I don't see how the result is any different here. I considered that argument in my brief, and I thought about making, Your Honor, and as tempted as I am to sort of push the argument in light of Your Honor's question, I don't believe that I can press a mootness argument here for that reason in all candor. The fact of the matter is the defendant did not enter a plea of guilty to what I believe was count three of the indictment. In a formal sense, he pled not guilty, and the jury returned a verdict of guilty. Their concession was reached. Their decision not to contest the gun was reached after, for all intents and purposes, the district court had denied a motion to suppress, and they never withdrew it. They never waived it, and the defendant never entered a plea of guilty to that charge. They made a tactical decision based on evidence that was already in evidence, so stuck with an unfriendly set of facts. Trial counsel makes a decision, okay, let's fight the most serious charge. We'll sort of concede that. I don't think I can argue mootness, because in theory, if this court believes that the gun was improperly seized, well, the gun would be out of evidence, and I would have nothing. And then, but it would still be open to the defendant to, even though he had once agreed not to contest the charges, to sort of take that back. I think he could, Your Honor. Again, I could be wrong. I don't want to bind the United States to every argument in the country, but my sense of this case is that a defendant's decision to sort of deal with an unfriendly bit of evidence that they've tried to keep out but lost. I'm not questioning the judgment or the evidence. If you were to write, just imagine for a moment, purely hypothetically, if you're writing an opinion saying, okay, the gun's staying out, so now it's unclear to me what happens next, given that the defendant has already formally agreed, after being warned and everything, sort of after this colloquy, kind of a modified Rule 11 colloquy, he's not contesting the charge, with or without the evidence. You think there's a way. I think there's a way for defendant to do so, Your Honor. I think that if this court were to order that the motion should have been granted to suppress the gun, that means that the evidence would not have been presented at the trial and the defendant would not have had to deal with the tactical problem of whether to embrace it or not. The evidence would be suppressed and the defendant wins. In all candor, I do think they've preserved the issue. It may be on a different day. Law changes. I have a different set of facts to look at it differently, but for purposes of this case, I decided not to make a argument for those reasons. I wasn't sure I could prevail on those facts. I want to go back to the Fourth Amendment question, just, and you may not can answer this question, but it's my understanding that when a person is walking along with a pistol stuck in their pants under the shirt, that there are certain mannerisms that are characteristic and recognizable by an experienced police officer that would tell an officer, you know, the check to the security check, the constant movement of the gun to get it so it doesn't fall down in your pants or fall out or whatever, that there are characteristics that are familiar to police officers. When they see a person walking along, that they will see things that will alert them to the fact this person may have something tucked in their waistband. Obviously, there could be innocent explanations for touching your waistband. Maybe you forgot your belt or something, but there are familiar to experienced police officers that would reflect or lead them to believe or suspect that a person is carrying a gun tucked in their pants. Yes, very much so, Your Honor. An officer Painter actually testified at the beginning of his testimony, I think in connection with the first and second waistband checks he observed. He was asked what did he believe that was, and he testified, not at length, but he testified about the fact that in his experience as a police officer, because of the way people carry guns and because of the tendency of guns to slip around and move around, they often have to be secured in a way that other things don't have to be secured. Your Honor is correct. There are conceivable innocent explanations, but most everything else, the particular position, location, and manner in which firearms are often tucked results in slippage, and they're heavy, and they have to be sort of re-secured. An officer Painter testified about that. It was a good summary. It wasn't at length, but he did testify about that. You're not arguing, right, that one waistband check is so readily identifiable that that would have been reasonable suspicion? You're resting on the fact that it was more than one? I could imagine a case in which one waistband check, for whatever reason, might be enough, but I don't think that's the case. Is there such a case in the Fourth Circuit? I've never found one, Your Honor. In the history of cases, maybe someday there will be, but not in this case. I've had cases where, again, different facts, a defendant is wearing a slick shirt, a very tight shirt, and the officer can almost see the outline. This is a case where the I would not submit that the first waistband check provided the suspicion in this case, no, Your Honor. You see where this is going. I mean, in a society where we have increased use of concealed weapon permits, I mean, they're all over the place. I'm not so sure it's going to be limited as the Georgia factors to the area you're in, high crime, and things of that nature. If what you're saying here is that an officer, based upon his experience, and simply by testifying, he could be anywhere. He could be in that Bible shop that we're talking about, and there's someone in there who's got a priest collar. If he's moving his hand toward his waist alone and nothing else, he can pull his gun out, and then he can say, move your hands out. Is that what you're saying? In the right circumstances, yes. I'm not sure right circumstances are a factor here because he didn't testify to right circumstances. I don't think he mentioned anything about high crime area or the particular circumstances here. He simply said, when you see someone moving their hand down toward their waist, typically that's what they're doing. We've got to write an opinion on this. We write an opinion like that. What in the world is it going to mean? I mean, are you going to be able to go to the mall? Are you going to be able to go to a senior citizen center, where it sounds ridiculous, but there are concealed weapons. We can pretty much take good notice that they're just about everywhere now because of the prevalence of out there that permits it to be an issue. Where are we on this? I mean, what do we do? You can see this could lead to a very bad situation if we don't articulate a very firm rule, or do we need to reach it? That's kind of the aspect of it. Sometimes, I'm not saying we don't reach it, but do, from your perspective, is there an argument we don't reach that? Yes, Your Honor, because under the mandate rule, the court does not have to. To the extent that there's any lack of clarity or lack of completeness about this record, on the mandate rule issue, the court should simply affirm based on the mandate rule. The problem is the mandate rule has that little third element on blatant error. If we see this as a blatant error, then we've got to deal with it. You should if you see blatant error, Your Honor, but respectfully, the court should not find blatant error in this case. On the blatant error issue, I think the court can take comfort in the entire record in this case. We're not just limited just to the record? Can we consider, I mean, is it what's in the briefing note? Outside of what was presented here? I think the court can on the mandate rule issue because it goes to the question of whether there was serious injustice. The government's proffer of the facts was not made part of the record because of the unusual procedural posture of this case, which I don't think was anyone's fault. It was just an unusual case in terms of how it evolved. Part of it was because of good tactical decision making by the defendant. Part of it was because of the district court's ruling. Part of it was because of how the prosecutors chose to present their evidence. As a result, we end up with a situation here five years later in which the gun was in evidence and the issue is can the defense show that there should be this exception, which appears to be relatively narrowly tailored, this exception to the mandate rule, which is an important principle in the government's opinion. The idea that we're not going to continue to rehash appellate issues over and over again. We could have a third, a fourth, and a fifth appeal in this case if we don't apply the mandate rule properly. I don't think that they can sustain that burden when we consider the entire record in I think the court can consider the facts as proffered. That's why Officer Painter was there. This illuminated the Officer Painter's understanding of what was going on. It would have gone in a full motions hearing or if we had not had the constrictions of testimony because we were in front of a jury and we wanted to sanitize the proof, again, to favor Mr. Hawkins, I think it was appropriate to do so, we would have had a lot of background testimony that would have put all of Officer Painter's observations in context. That is Officer Painter's testimony is not enough, which although I agree with Your Honor, we want to avoid a slippery slope. Terry and the Fourth Amendment ultimately are fact-sensitive principles, they should be. The objective standard is one of reasonableness. And we have an officer, if you just look at his testimony in isolation, I think the bottom line is, was it reasonable for him to believe that Mr. Hawkins posed a danger to him? Yes, it was. After three waistband checks, after that third one, just as the officer's approaching, the officer's by himself, Mr. Hawkins is there, the officer's in full uniform, any good cop is going to believe that there's a potential danger there because of what he's observing. That's before you get to all of everything else. But everything else should be considered in the context of the mandate rule, the government respectfully says. Mr. Hawkins started out, he had a bunch of charges, 360 month sentence, then gets an appeal and then goes back and he other two, so now we're just dealing with possession by a fellow. So I take it everything that anonymous tip was about, that wasn't Mr. Hawkins that did the shooting of that officer. Your Honor, I really do not know, I have to confess, I do not know what the facts are with respect to that police shooting. I don't believe that the police shooting, and I see my time's elapsed, thank you. The police shooting was never charged federally, to the best of my knowledge. We had the carjacking and then we had the arrest of Mr. Hawkins. Thank you for that. Thank you, Your Honors. All right, Mr. Saunders. If I could address any two issues unless there are other questions. First, Judge Harris, your question about the decision of the defense attorney and that colloquy, I'd point out that the initial part of the colloquy by the defense attorney was very short. And he did nothing more than what I've done in 35 years of practice of criminal defense work, which is I'm looking at a potential 2255 based on a trial tactic decision, and I want the record to be clear that my client knows what's going on. So that was it, and certainly nothing in that kind of record making creates any binding. Defense counsel can change his mind, his or her mind, the client can change his mind. What was the tactic from the tactical I'm troubled by the abandonment of an issue. I do not understand that. I honestly can't put myself in his mind as to why he would have done it, to be quite candid. And he would have to speak to that directly. I can say pretty assuredly I can't imagine myself doing it, that's all. That doesn't mean that it was improper or whatever, I don't know. I certainly was not part of those discussions and tactical decisions. I have to make sure I got this right. Is this a direct appeal of the ineffective assistance? It is for my client. He has an opportunity to develop the record on it. Yeah, there's been no record. My client, that's one of my client's two issues he wished to raise was that he felt that his attorney was incompetent for not raising the issue the first time around on the appeal. Now, if I can correct it, I conflated some facts in this case about the showing of hands and I was mistaken. The showing of hands was after Mr. Hawkins was already down on the ground and being arrested. The facts actually occur, I'm sure they occur in as well in the joint appendix filed by Mr. Hansen. But on page 10 of his pro se brief, which is 177 of the direct examination, and it goes like this, your honors. As I approached the door, got ready to open door, the defendant moved his hand. He was leaned up against the trash can, moved his hand toward his waistband. Which side of his waistband? His right side. Is that the same side you see him grabbing for? Yes. As you open the door and actually enter the store, did the defendant make any additional movements? Well, at that time, when I seen him make the motion towards his waistband, I withdrew my weapon. I ordered him to the ground. Why did you withdraw your weapon? Because I thought he had a weapon. I thought he was going for a weapon. When you drew your weapon and ordered the defendant to the ground, did he comply? No. Did he say anything to you? He just said, what's this all about? Now, a Terry stop involves two things, your honor. There's obviously a reasonable basis for believing a person may be armed, but there's another part, which is you reasonably suspect criminal activity may be occurring. Within the framework of that which was presented, not the material un-presented, there is nothing to indicate that this stop was based on criminal activity that may be going on. It was, this is a person I want to identify. It had nothing to do with a normal Terry stop. A normal Terry stop, you see drug activity, what looks like drug activity. You see someone looks like a rogue and vagabond hanging around to do a robbery. Those are Terry stops. A Terry stop is not, the person's not doing anything other than walking down the street. There's nothing to indicate any reason for criminal activity going on, and then you search for weapons. I just want to make sure I understand your argument. Are you saying that there was no reasonable suspicion to think that the person, that your client had a gun, or that even if he had a gun, there was no reasonable, there was no reason to believe it was illegally held? Both. Unless there are further questions, your honor. Thank you very much. Thank you.
judges: William B. Traxler, Jr., James A. Wynn, Jr., Pamela A. Harris